Clark *v.* Davis.

---

### Jacob F. Clark

*v.*

### Thomas W. Davis and wife and others.

1. Where a deed contains no statement as to the number of acres conveyed, and the weight of evidence shows that the conveyance was in gross and not by the acre, the fact that the property contains, in reality, twenty acres, out of two hundred and forty-four, less than both the grantor and grantee supposed, is no defence on foreclosure of a mortgage given by such grantee as part of the consideration, no fraud being shown or alleged.

2. Even if such deficiency were a defence to the mortgagor, it is not to his grantee, who has assumed and covenanted to pay the mortgage, as part of his purchase-money.

---

Bill to foreclose. On final hearing on pleadings and proofs.

*Mr. M. P. Grey* and *Mr. A. Browning*, for complainant.

*Mr. P. L. Voorhees* and *Mr. James Wilson*, for defendant T. W. Davis.

THE CHANCELLOR.

The bill is filed to foreclose a mortgage for $11,500 and interest, given May 23d, 1867, by Josiah Davis to the complainant, in part satisfaction of another mortgage given by the former to the latter, January 11th, 1867, for part of the purchase-money of a farm in Salem county, called and known as "Pleasant Meadows," conveyed at the latter date, with warranty, by the complainant to Josiah Davis, for the consideration of $21,000. December 29th, 1873, the latter sold part of the property, about half an acre, to William Oliphant, and on the same day sold and conveyed the residue, with warranty, to Thomas W. Davis, the defendant, for the consideration of $17,045.

Thomas W. Davis, by his answer, alleges, by way of defence, that when the complainant sold the property to Josiah Davis, he falsely represented that it contained 244 acres, while in fact it contained only about 224 acres, and that Josiah Davis, when he sold the property to him, falsely represented to him that its contents were 244 acres; that Josiah Davis agreed to buy the farm, only on the representations of the complainant as to the contents, and if he had known what were its true contents, he would not have given the price which he did, which was stated by the complainant as about $86 per acre.

The answer further states that, after the property had been conveyed to Thomas W. Davis, he discovered, by a survey, that the distance on the eighth line of the description of the principal tract in the deed from the complainant to Josiah Davis, which is, " thence along said lane N. 45½° E., 16 chains and 35 links, to a stone in the road leading from Woodstown to Swedesboro," should have been 11 chains and 40 links, and the answering defendant claims a

deduction from the mortgage for the amount of the difference between the contents as represented and as they actually were, at $86 an acre. Josiah Davis is not a party to the suit.

The complainant sold the farm to Josiah Davis for the price of $21,000. The latter first applied to him to sell him a part of the farm, but the complainant absolutely refused to do so. He then asked him whether he would sell him the whole, and at what price. The complainant replied in the affirmative, and fixed the price at $21,000. Davis offered him $20,000, which he refused. The complainant swears that he said nothing about the contents until after he had named his price, $21,000. He bought all the property, except about an acre, from John Wills, March 24th, 1853, and bought the rest, about an acre, of Elijah B. Horner, in 1861. He says that when he told Davis what price he would accept, Davis asked him how many acres there were in the farm, and he replied that Gov. Stratton showed him a map when he bought the property (referring to the purchase from Wills), and said there were 244 acres, and that other persons there said the same thing. He adds that he told Davis that he had never had the farm surveyed, and told him also in what manner he had bought the property, that is, that he had bought it as a farm of 244 acres, at the rate of $52 per acre.

This statement of the complainant is corroborated by the testimony of Josiah Davis, and his son William M. Davis, and by the testimony of the scrivener who drew the deed from the complainant, and, indeed, by the deed itself. Josiah Davis says he asked the complainant what he would take for the whole farm, and the latter said he would take $21,000 for it. He also says that he asked the complainant if he would not take less, if he would not take $20,000. William M. Davis says the complainant wanted $21,000 for the land, and that was about $86 an acre. The scrivener says he was told the price was to be $21,000, and nothing was said, to his recollection, about the price per acre.

The deed itself makes no representation as to quantity, except as to the Horner tract. It describes the Wills property by metes and bounds, and, as to the contents, makes only the following statement: " Containing all the land within these boundaries, be the quantity more or less." As to the Horner property, it states its quantity as one acre, more or less.

It is quite clear that the property was sold at a gross sum, without reference to the number of acres which it was believed to contain. The complainant swears that, in all the negotiations between him and Josiah Davis, touching the sale and conveyance of the farm, there was nothing said about selling it by the acre, and that no calculation was made between him and Davis as to how much per acre $21,000 for the farm would be. All agree that the complainant asked $21,000 for the farm. At $86 per acre, 244 acres would amount to $20,984. It is evident that the sale was at a price in gross, for no exact price per acre was stated.

The complainant swears that, had he known that the farm contained only 224 acres, he would not have sold it for less than $21,000, and it is noteworthy that Josiah Davis does not say that he would not have given $21,000 for it had he known that it contained only 224 acres. It is not to be forgotten that the complainant did not offer the farm to Davis, but the latter approached him with an offer to purchase, asking him to fix his price. Not only did the complainant convey all that he had originally bought (and he had paid for that property, when he bought it, at the price of $54 an acre for 244 acres, supposing it contained that quantity), but he conveyed, also, the parcel of about an acre which he bought afterwards of Horner, so that he sold and conveyed to Davis about one acre more than he originally purchased.

That there was no actual fraud on the part of the complainant, is admitted. He gave to Davis the map which he had received, and on it was written a statement (which was

there when the complainant received it) of the number of acres in the Wills property. He had been assessed for and paid tax for several years on that property as containing 250 acres, and it was only after effort that he succeeded in inducing the assessor to estimate the quantity at 244 acres, and he ever afterwards, so long as he owned the property, paid tax on that basis. He denies that he made any representation as to the contents as of his own knowledge, or that the price was dependent in anywise on the number of acres which the property was supposed to contain.

The error in the length of the eighth line of the description of the Wills property could not have misled Josiah Davis. The course terminates at a stone in a public road, and the next course is along that road to land of White, formerly Bradway's. To give the line the length called for by the description would include a parcel of land never owned by the complainant, and to which he never claimed title beyond the road; and then, too, the ninth line must be run, not as called for by the deed, up the road to White's corner, but in a field beyond the road belonging to Howey. There was no difficulty in ascertaining the true boundaries, and the rule is that the least certain and material parts of the description must yield to those which are most certain and material, if they cannot be reconciled. The length of the eighth line was manifestly a mere mistake.

There was no covenant in the deed from the complainant as to the quantity, and none can be implied. If the land was not sold at a price per acre, if the price paid for the land in nowise depended on the number of acres which the property was supposed to contain, Josiah Davis would be entitled to no relief. A failure of a mortgagor to keep an independent covenant, is no defence to a suit for foreclosure of a mortgage, where the mortgagor has agreed to pay the money at a certain time absolutely, and not on condition that the covenant shall be performed. *Coursen* v. *Canfield, 6 C. E. Gr. 92.*

And though the mortgagor, in a purchase-money mort-
gage, may himself have the benefit of a deduction where,
by fraud or misrepresentation of the mortgagee, he has
been induced to pay a higher price for the mortgaged prem-
ises than he otherwise would have done, his grantee of the
equity of redemption can have no claim to such deduction,
where there is no covenant, to the benefit of which, as
grantee, he would be entitled. And, in the present case,
the defendant Thomas W. Davis is wholly without ground
of claim; for not only is there no covenant, but he agreed
with his grantor to pay the complainant's mortgage, and the
amount of it was left in his hands (allowed to him in the
settlement of the purchase-money) for the purpose. The
deed from Josiah Davis to him expressly excepts from the
operation of the covenants the complainant's mortgage and
all interest due thereon, to the 25th of March, 1874 (the
deed is dated December 29th, 1873), and declares that the
amount of the mortgage has been deducted from the pur-
chase-money of that deed, and that the grantee "is liable"
and "stands bound" for the payment of it. To give him
the benefit of an alleged misrepresentation by the complain-
ant to Josiah Davis, whereby the latter was induced to pay
more for the property than he would otherwise have done,
would be to give him an advantage to which he has no
right whatever. Whether the alleged misrepresentation be
as to the contents of the farm, or as to its quality, or as to
any other matter, the right of action, and, therefore, of
defence in respect thereof, is, in the absence of any cove-
nant to the benefit of which Josiah's grantee is, as grantee,
entitled, in the former and not in the latter.

In *Coster* v. *Monroe Mfg. Co., 1 Gr. Ch. 467,* a deduction
of damages for defective title to part of the mortgaged
premises was allowed in a foreclosure suit; but there was a
covenant of warranty.

In *Couse* v. *Boyle, 3 Gr. Ch. 212,* a deduction was allowed
in a like suit for damages for deficiency in quantity, but the
allowance was to the mortgagor, and not to his grantee.

In *Blair* v. *McDonnell, 1 Hal. Ch. 327,* where relief was granted on the ground of mutual mistake, on a bill to set aside a transaction of the conveyance of land, and giving a mortgage for the consideration thereof, the relief was sought by the mortgagor.

In *Hopper* v. *Lutkins, 3 Gr. Ch. 149,* a grantee of land came into this court for relief against a suit at law on a note given by him for the purchase-money. He claimed that, by mistake, a covenant had been omitted from the deed. Relief was denied. The court intimated that it might have been granted, had it been sought in defence to a suit to foreclose the mortgage; but the suit was brought by the mortgagor.

The defendants' counsel urge that a grantee of mortgaged premises who has purchased subject to a mortgage thereon, may still make any legal defence to a suit thereon, citing *State* v. *Jersey City, 6 Vr. 381, 388.* That is not the rule in equity in such a case as this. Where the grantor allows the grantee the amount of the mortgage in the purchase-money, leaving it in his hands to be applied to the payment of the mortgage, and the grantee agrees to pay it accordingly, the latter can have no claim to any deduction on the ground of alleged misrepresentation by the mortgagee to the mortgagor. The amount of the mortgage is in his hands in trust to pay it to the mortgagee, and whether the mortgagor could defend himself against it or not, is no concern of his. *Jones on Mort.* § *1491 and note ; Tichenor* v. *Dodd, 3 Gr. Ch. 454; Freeman* v. *Auld, 44 N. Y. 50 ; Ritter* v. *Phillips, 53 N. Y. 586 ; Conover* v. *Hobart, 9 C. E. Gr. 120.*

Nor does it make any difference that the mortgagor, in selling to his grantee, made the like misrepresentation to him. His claim for relief is against his grantor. Nor will the fact that the latter is insolvent make any difference. The grantee has no claim to relief as against the mortgagee.

There will be a decree for the complainant for the full amount due on his mortgage.